UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re<br><br>OTIS RONEY<br>VIRGINIA RONEY,<br><br>    Debtors.<br>_____ | Case No. 11-10917-DHW<br>Chapter 13 |
| OTIS RONEY and<br>VIRGINIA RONEY,<br><br>    Plaintiffs,<br>  v.<br><br>SPRINGLEAF FINANCIAL SERVICES<br>CORPORATION,<br><br>    Defendant. | Adv. Proc. No. 12-1006-DHW |

### MEMORANDUM OPINION

Before the court is Springleaf Financial Services Corporation's ("Springleaf") motion to dismiss this adversary proceeding. Therein, Springleaf contends that the complaint fails to state a claim upon which relief may be granted and seeks dismissal under Fed. R. Bankr. P. 7012(b). For the reasons that follow, Springleaf's motion to dismiss will be granted.

### Jurisdiction

The court's jurisdiction in this contested matter is derived from 28 U.S.C. § 1334 and from an order of the United States District Court for this district wherein that court's jurisdiction in title 11 matters was

referred to the Bankruptcy Court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, this action is one of recoupment against a claim upon the estate and therefore is in the nature of an objection to claim. As such, this is a core proceeding under 28 U.S.C. § 157(b)(2)(B), thereby extending this court's jurisdiction to the entry of a final order or judgment.

## Plaintiffs' Factual Allegations

The plaintiffs' claims in this lawsuit are predicated on Springleaf's alleged violations of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1601 note *et al*.

Plaintiffs contend that they entered into a consumer credit transaction with American General Financial Services of Alabama, Inc. on March 24, 2006.[1] Compl., ¶ 4. Under that contract, they were provided a line of credit up to a balance of $10,000 and a finance charge of 14.990%. *Id.* The Roneys contend they were to pay back the loan in full within five years of signing, with the repayment period beginning on March 29, 2006. *Id.*

Attached as exhibits to the complaint are a Notice of Right to Cancel the open end credit account; the Home Equity Line of Credit Agreement; Open-End Mortgage; and other documents executed with the agreement. *See* Compl., Exs. A and B.

The Notice of Right to Cancel provides, "We have agreed to establish an open-end credit account for you ..." Compl., Ex. A, ¶ 1.

The Home Equity Line of Credit Agreement contains a merger clause that provides, "**Entire Agreement**. This Agreement, together

---

[1] American General Financial Services of Alabama, Inc. merged with or was purchased by Springleaf, which is now assignee of American General's contracts including the one at issue here.

2

with all documents executed at the same time, contain the entire agreement of the parties concerning the subject matter hereof, and no party hereto has relied upon any representations except such as are specifically set forth herein." Compl., Ex. A, p. 20, ¶26.

The Open-End Mortgage provides, "**THIS OPEN-END MORTGAGE** ("Security Instrument") is given on March 24, 2006. . . . Borrower may incur indebtedness to Lender in amounts fluctuating from time to time up to the principal sum of Ten Thousand And 00/100 Dollars (U.S. $10,000), which amount constitutes the maximum amount of unpaid loan indebtedness . . . ." Compl., Ex. B, p. 2.

Plaintiffs state that "[b]ecause [their] loan meets the HOEPA definition of a high rate mortgage, the transaction was subject to additional disclosure requirements that must be provided three days in advance of the consummation of the transaction." Compl., ¶ 10. According to the plaintiffs, those disclosures were not provided in advance but rather on the same day as the loan was signed. *Id.* at ¶ 11. Plaintiffs also contend that the disclosures were not given "using 'conspicuous type size' as required by 15 U.S.C. § 1639(a)(1)." *Id.* at ¶ 12.

The plaintiffs seek damages, actual and statutory, only in recoupment against the defendant's claim against the estate.

## Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) provides that "Rule 12(b)-(I) [of the Federal Rules of Civil Procedure] applies in adversary proceedings." "[F]ailure to state a claim upon which relief can be granted" is grounds for dismissal under Fed. R. Civ. P. 12(b)(6). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)

(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993).

## Contentions of the Parties

Springleaf's contention that the plaintiffs failed to state a claim upon which relief can be granted is based on a number of grounds, chief of which is that HOEPA requirements do not apply to a transaction that is an open end credit plan.[2]

While the plaintiffs acknowledge that the HOEPA requirements are inapplicable to open end credit plans, they maintain that the transaction *sub judice* was, in reality, not open-ended. They urge the court to ignore the "open-end" labels given to the transaction by the parties in their written contract. In support of that contention, they point out that the full credit limit was borrowed from the inception of the transaction. Hence, they conclude that this was a one-time loan because no further credit was available.

## Conclusions of Law

HOEPA loans are higher rate or higher cost consumer loans that are "secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or **a transaction under an open end credit plan. . . .**" 15 U.S.C. § 1602(aa)(1) (emphasis added). The parties do not dispute that an open-end loan is outside the reach of the HOEPA requirements and that their written contract, in more than one instance, denominates the transaction as open-ended.

---

[2] In addition to its contention that this open end credit transaction lies outside the HOEPA requirements, Springleaf further contends that the claim is barred by the statute of limitations and that the complaint falls short of pleading requirements. Because the court agrees that the transaction here is open-ended, it need not address Springleaf's other grounds for dismissal.

4

Here, the plaintiffs seek to contradict the written contract by contending the transaction was not open-ended. To do so, they must confront the parole evidence rule which was brought into play as a result of the merger clause of their written contract. The Alabama Supreme Court explained the parole evidence rule in *Knapp v. Palm Harbor Homes (In re Palm Harbor Homes)*:

> As a general rule, "when parties reduce a contract to writing and intend that writing to be the complete contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter, or contradict the contractual writing." *Sherman v. Woerner Magnolia Farms, Inc.*, 565 So.2d 601, 605 (Ala. 1990). This is so, because, "all *prior and contemporaneous negotiations* are [deemed to be] merged" into that writing. *Crimson Indus., Inc. v. Kirkland,* 736 So.2d 597, 601 (Ala. 1999) (emphasis in original).
>
> "When a contract contains ... a merger clause, the agreement is deemed to be 'integrated,' such that evidence of prior or contemporaneous agreements shall not be admitted to contradict the terms of the agreement." *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1309 (11th Cir. 1998). Merger clauses thus create a *presumption* that the writing represents an integrated, that is, the final and complete, agreement of the parties. See *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 504, 746 A.2d 1277, 1291 n. 15 (2000). "In order to rebut the presumption and, in effect, invalidate the merger clause, a party must offer evidence to establish the existence of fraud, bad faith, unconscionability, negligent omission or mistake in fact." *Smith v. Central Soya of Athens, Inc.*, 604 F. Supp. 518, 526 (E.D.N.C.1985). See also *Lake Martin/Alabama Power*

5

> *Licensee Ass'n, Inc. v. Alabama Power Co.*, 601 So.2d 942, 945 (Ala.1992) ("When fraud in the inducement has been ruled out, ... all prior statements and negotiations are merged into the written contract and ... in the absence of an ambiguity ..., parol evidence will not be received to explain, contradict, vary, add to, or subtract from the express terms of the written contract."). Whether a contract is integrated is ordinarily a question of law for the court to decide. *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 797 (11th Cir.1996); *Associated Catalog Merchandisers, Inc. v. Chagnon*, 210 Conn. 734, 740, 557 A.2d 525, 528 (1989); *Walker v. Saricks*, 360 Pa. 594, 599, 63 A.2d 9, 11 (1949); see also *Hibbett Sporting Goods v. Biernbaum*, 375 So.2d 431, 435 (Ala.1979).

*Knapp v. Palm Harbor Homes (In re Palm Harbor Homes)*, 798 So.2d 656, 660-661 (Ala. 2001).

In the instant case, the merger clause of the contract creates a presumption that the writing expresses the final and complete agreement of the parties — namely that they agreed to an open end credit plan. In order to rebut that presumption, the plaintiffs must establish the existence of fraud, bad faith, unconscionability, negligent omission, or mistake in fact. In their complaint, they make no such factual assertions. Without doing so, the parole evidence rule precludes evidence to contradict the written contract. The plaintiffs have, therefore, failed to state a claim upon which relief may be granted.

Notwithstanding the parole evidence rule, the plaintiffs have otherwise failed to state a cognizable claim. Their contention that the transaction was closed-ended because they received initially the full limit of the line of credit misconstrues the contract.

The term "open end credit plan" has been defined by the Consumer Credit Protection Act to mean:

> a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. A credit plan which is an open end credit plan within the meaning of the preceding sentence is an open end credit plan even if credit information is verified from time to time.

15 U.S.C. § 1602(i).

The Federal Reserve Board staff interpretations concerning an "open end credit plan" are found in Regulation Z at 12 C.F.R. § 226. Staff opinions should be considered dispositive unless demonstrably irrational. *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980). An open end credit plan must meet all three criteria set forth in the title 15 definition. The three definitional criteria are (1) the creditor reasonably contemplates repeated transactions under the plan, (2) the plan prescribes the terms of those transactions, and (3) the plan provides for a finance charge which may be computed from time to time on the outstanding balance. 12 C.F.R. § 226.2(a)(20).

In addition to these three criteria, Regulation Z adds a fourth criterion — that of a reusable line of credit. The staff interpretation states:

> 5. Reusable line. The total amount of credit that may be extended during the existence of an open-end plan is unlimited because available credit is generally replenished as earlier advances are repaid. A line of credit is self-replenishing even though the plan itself has a fixed

7

Case 12-01006    Doc 13    Filed 05/25/12    Entered 05/25/12 15:58:17    Desc Main
Document      Page 7 of 9

expiration date, as long as during the plan's existence the consumer may use the line, repay, and reuse the credit. The creditor may occasionally or routinely verify credit information such as the consumer's continued income and employment status or information for security purposes. . . . <u>This criterion of unlimited credit distinguishes open-end credit from a series of advances made pursuant to a closed-end credit loan commitment.</u>

12 C.F.R. Pt. 226, Supp. I, Subpart A (emphasis added).

The loan documents, which are exhibits to the complaint, clearly show that this transaction meets the definitional requirements of an open end credit plan. The documents provide for repeated transactions, the terms are prescribed, provisions are made for computing finance charges from time to time upon the outstanding balance, and the credit is self replenishing.

Plaintiffs' contention that this transaction was a one-time, closed-end loan because the full extent of the credit line was drawn initially simply ignores that additional credit would be available as the loan was repaid. The contract created a line of credit that was replenishable as advances were repaid. Because it did, plaintiffs have failed to state a claim upon which relief can be had.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss this adversary proceeding will be granted. A order doing so will enter separately.

Done this the 25th day of May, 2012.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

8

c: Cameron A. Metcalf, Plaintiffs' Attorney
   David A. Elliott, Defendant's Attorney
   Zachary D. Miller, Defendant's Attorney